**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| MASTER SALES LLC d/b/a/ COCONARA, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 1:14 cv 2040 |
| v. | ) ) | Hon. |
| HOOKAH, INC. d/b/a HOOKAH JOHN or TITANIUM CHARCOAL, | ) ) ) | |
| Defendant. | ) ) | |

**COMPLAINT**

NOW COMES Plaintiff, MASTER SALES LLC d/b/a COCONARA (hereinafter referred to as **"Master Sales"** or **"CocoNara"**), by and through its undersigned counsel, for its complaint against Defendants, and alleges as follows:

**Jurisdiction and Venue**

1. Jurisdiction over the parties and subject matter of this action is proper in this Court pursuant to 15 U.S.C. § 1121 (actions arising under the Lanham Act), 28 U.S.C. § 1331 (actions arising under the laws of the United States), 28 U.S.C. § 1332(a) (diversity of citizenship between the parties), and § 1338(a) (actions arising under an Act of Congress relating to copyright and trademarks). This Court has supplemental jurisdiction over the claims in this Complaint that arise under state statutory and common law pursuant to 28 U.S.C. § 1367(a).

2. Venue is properly founded in this judicial district to pursuant to 28 U.S.C. §§ 1391(b) and (c) because the defendants are subject to the courts personal jurisdiction in this district pursuant to FRCP 4(k)(2) and a substantial part of the events giving rise to

the claims in this action occurred within this District.

<u>**Parties**</u>

3.      Plaintiff, Master Sales LLC d/b/a CocoNara, is a limited liability corporation duly organized and existing under the laws of the District of Columbia with its principal place of business in the District of Columbia.

4.      Defendant, Hookah Inc. d/b/a Titanium Charcoal, is a corporation organized and existing under the laws of the State of California and doing business in the District of Columbia.

<u>**FACTS**</u>

<u>**The Famous CocoNara Brand and Products**</u>

5.      Master Sales LLC d/b/a "CocoNara" was founded in 2006 and has used its legally protected trademark, trade dress, and design elements/copyrights for over eight years on and in connection with the advertisement and sale of its products (the "CocoNara Marks").

6.      Master Sales manufactures and distributes a wide variety of hookah related products, ranging from hookah accessories to hookah tobacco. The primary goals of the business fall into four distinct areas: charcoal, creative and innovative products, restaurants and arguileh.

7.      Master Sales manufactures and imports its goods directly from Indonesia for worldwide distribution and sale. Master Sales handles their products from on board ship through to the shelves of the supermarkets and shops, ensuring that their customers, and their high standards, are fully satisfied.

8.      Master Sales sells its products both online at: https://www.coco-

nara.us/products.aspx, and through retail stores worldwide.

9.      Master Sales prides itself on its holistic approach to business, including its endless appetite for innovation and a translated application of those innovations on a worldwide basis.

10.     One of Master Sales's most lucrative products is its all-natural CocoNara charcoal, made from coconut shells for use on or in connection with hookah products.

11.     CocoNara is an environmentally-friendly product which is made of 100% natural ingredients, is extremely-long burning, economical to use, and is both tasteless and odorless. Unlike the traditional wood and manufactured coals on the market, CocoNara does not produce any sparks, smoke or smell during ignition or use. It does not self-extinguish, and it produces very little ashes.

12.     CocoNara was the first coconut brand hookah coal on the market and has developed considerable goodwill as a result of the company's innovative drive and the high quality of the product. The CocoNara Marks and the goodwill associated therewith are extremely important and valuable assets of Master Sales's business.

13.     Master Sales has expended substantial time, money, effort and other resources in developing, advertising, and otherwise promoting its all-natural charcoal product and the associated CocoNara mark.

14.     As a result, products bearing the CocoNara mark are widely recognized and exclusively associated by relevant consumers, the public, and the trade as being one of the most superior brands of high quality, all-natural charcoal products sourced from Master Sales, and having acquired strong secondary meaning.

### The CocoNara Trademark

15.     Master Sales[1] is the owner of the following United States Federal

Trademark Registrations (hereinafter collectively referred to as the "**CocoNara**

**Trademarks**"), which are registered on the Principal Register of the Untied States Patent

and Trademark Office:

| Registration No. | Mark | Classes | Date of Registration | Image |
|---|---|---|---|---|
| 3391640 | COCONARA | 4 for *inter alia* charcoal briquettes. | March 4, 2008 | COCONARA |
| 3391641 | COCONARA | 4 for *inter alia* charcoal briquettes. | March 4, 2008 |  |
| 4431787 | COCONARA TOBACCO | 34 for *inter alia* flavored tobacco, hookah tobacco, molasses tobacco, and smoking tobacco. | November 12, 2013 | COCONARA TOBACCO |

16.     These registrations are valid, subsisting, in full force and effect. See

Exhibit A-B. In addition, the two marks in question, i.e., the "standard character"

CocoNara word mark and the "special form" CocoNara design logo, have become

---

[1] All trademarks registered in Raed Haidar's name were assigned in full on August 1, 2014 to Master Sales for use on or in connection with the above-cited goods.

incontestable pursuant to 15 U.S.C. § 1065 as they have been registered for more than five (5) consecutive years without contest.

17.     The registration of the marks constitutes prima facie evidence of their validity and conclusive evidence of Master Sales's exclusive right to use the CocoNara Trademarks in connection with the goods identified therein and other commercial goods.

18.     The registration of the marks also provides sufficient notice to Defendants of Master Sales's ownership and exclusive rights in the CocoNara Trademarks.

19.     The CocoNara Trademarks qualify as famous marks, as that term is used in 15 U.S.C. § 1125(c)(1).

20.     The CocoNara Trademarks at issue in this case have been continuously used and have never been abandoned.

## Defendant's False and Misleading Advertising Regarding CocoNara and its Original Manufacturer

21.     Defendant, Titanium Charcoal, like Coconara, manufactures and distributes coconut charcoal, along with various other hookah-related products.

22.     Titanium Charcoal, through its website which can be found at: http://www.hookahjohn.com/Titanium-Coconut-Coal-16ct-Box-t16.htm, has recently made representations that it is the "newest and best brand of Coconut Coals available."

23.     Titanium Charcoal's box contains the following representations about its own product and that of CocoNara's:

> TITANIUM Coconut Coal is the collaboration of two giants in the Hookah World. **Cocotama** is the inventor and manufacturer of the best selling brands; **COCOBRICO** in Europe and Russia and **COCONARA** in the USA (till 2013). They operate the largest and finest coconut charcoal factor in Indonesia since 2005. The founder is known as the person to develop and market the FIRST coconut shell charcoal briquette for commercial use in the world. His first export was to Belgium in 1986. To this day, Cocotama continues to manufacture the best

hookah coconut coals, made of 100% natural matierals. It's combination of high carbon and low ash is the state of the art, the hallmark of great quality.

24.     Titanium's claims that "Cocotama is the inventor" of CocoNara is wholly untrue.

25.     While Cocotama was the manufacturer of CocoNara until December of 2013, Cocotama was **not** the inventor.

26.     Mr. Sharbel Dabaghy is the actual inventor of CocoNara and the original licensor of the product.

27.     In late 2007, Mr. Dabaghy granted the Plaintiff, Mr. Haidar, the exclusive right to import, market and sell CocoNara in the United States, Canada, and Central and South America.

28.     Mr. Dabaghy subsequently granted the Plaintiff, Mr. Haidar, permission to register the CocoNara Trademark in the United States under his name, which was later assigned to Master Sales.

29.     As part of its product description for its coconut coals, Titanium Charocoal has made the following representations about its own product and that of CocoNara's:

Titanium is the newest and best brand of Coconut Coals available. They are the only brand to use 100% pressed coconut shell, contrary to other brands claims. Most brands will use fillers such as wood and sawdust to cut costs, which causes lack of performance and odors. Hookahjohn has partnered up with CocoTama, the best and original manufacturer of coconut coals[.] The story on this product is that they are made from the original manufacturer that CocoNara used when they first came out. Over the years CocoNara has dropped in quality and consistency because they have been outsourcing their production to other manufacturers. The original manufacturer has decided to stop producing for CocoNara because of this. If you are familiar with coconut coals you know that CocoNara had the best quality years ago.

30.     Defendant's claims that "[o]ver the years CocoNara has dropped in quality

and consistency because they have been outsourcing their production to other manufacturers" and that "[t]he original manufacturer has decided to stop producing for CocoNara because of this" is wholly untrue.

31.     Until on or about December 2013, Plaintiff had been consistently using the same manufacturer, Daniel Utama d/b/a "CocoTama" and no outsourcing of production had occurred.

32.     The alleged "outsourcing" of Plaintiff's products did not occur until Plaintiff fired their original manufacturer based on several complaints from Plaintiff's customers regarding the decreased quality of the charcoals he was manufacturing.

33.     Plaintiff investigated the complaints and attempted to resolve the problem with their original manufacturer, who claimed that the quality had been consistent over the years and that they had not changed anything in the formula for production.

34.     Despite Defendant's claims, CocoTama, Plaintiff's original manufacturer, did not voluntarily stop producing for CocoNara.

35.     In fact, in or around December 2013, CocoNara fired CocoTama as their manufacturer because, despite the obvious inconsistency in production, he refused to fix the problem.

36.     The remaining statements made by Defendant are misleading and likely to cause consumer confusion as to the quality and contents of both Defendant and Plaintiff's products.

37.     Through its representations regarding Titanium Charcoal's use of CocoNara's original manufacturer and other related statements, Titanium Charcoal has attempted to build on the established goodwill and reputation of CocoNara's brand in the

relevant consuming public, i.e., natural hookah coal users.

38.     In comparing Titanium Charcoal to CocoNara Charcoal, using false representations of fact for purposes of advertising, Defendant has attempted to insinuate that their product is of better quality than CocoNara's and/or is of the same quality that CocoNara's was when it first came out.

39.     Defendant is well aware of the extraordinary and continually-increasing fame and strength of the CocoNara Brand and the CocoNara Marks, and the incalculable goodwill associated therewith.

40.     Defendant has no license, authority, or other permission from Master Sales to use any of the CocoNara Marks in connection with the designing, manufacturing, advertising, promoting, distributing, selling and/or offering for sale of their products.

41.     Nonetheless, Defendant has used CocoNara's mark without a proper trademark registration symbol or any sort of disclaimer.

42.     Defendant has been engaged in the above-described illegal unfair and infringing activities knowingly and intentionally or with reckless disregard or willful blindness to Master Sales's rights, or with bad faith, for the purpose of trading on the goodwill and representation of the CocoNara Marks and CocoNara products.

43.     Defendant's activities, as described above, are likely to create a false impression and deceive consumers, the public, and the trade into believing that there is a connection or association between the Defendant's products and Master Sales.

44.     Upon information and belief, Defendant intends to continue to advertise its own products using and misleading representations of fact regarding Plaintiff's products, unless otherwise restrained.

## COUNT I
## False Advertising, 15 USC § 1125(a)(1)(B)

45.     Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1-44 as though fully set forth herein.

46.     Defendant's statements regarding the decreased quality and outsourcing of Plaintiff's products, as well as Defendant's claim that Plaintiff's original manufacturer stopped producing for them because of this, are literally false and misleading statements of fact made in a commercial advertisement about Plaintiff's product.

47.     Defendant's further claim that Cocotama is the "inventor" of CocoNara is an equally false and misleading statement of fact made directly on Defendant's product packaging and used as a form of commercial advertising.

48.     These statements have or are likely to deceive a substantial segment of established and potential consumers regarding the source, quality and consistency of both Defendant and Plaintiff's products.

49.     The deception is material in that it is likely to influence the consumer's purchasing decisions because it would lead and has led potential customers to believe that CocoNara's quality is inferior to that of Defendant's.

50.     Both Plaintiff's and Defendant's goods are in interstate commerce.

51.     Upon information and belief, Defendants have made and will continue to make substantial profits and gains to which they are not in law or equity entitled.

52.     Upon information and belief, Defendants intend to continue their infringing acts, unless restrained by this Court.

53.     Plaintiff has been and is likely to be further injured as a result of these false statements of fact by direct diversion of sales to Defendant and by a loss of goodwill

associated with Plaintiff's products.

## COUNT II
### Trademark Infringement and/or Unfair Competition, 15 U.S.C. § 1114

54.     Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1-53 as though fully set forth herein.

55.     Defendant, without authorization from Master Sales, has used and is continuing to use Master Sales's Trademark in connection with the advertising of his own product without an accompanying trademark registration symbol or any associated disclaimer.

56.     The introductory sentence on the back of Defendant's product packaging claims that "Titanium Coconut Coal is the collaboration of two giants in the Hookah World."

57.     The next sentence, in bold, states that "**Cocotama** is the inventor and manufacturer of the best sellings brands; **COCOBRICO** in Europe and Russia and **COCONARA** in the USA (till 2013)."

58.     Without sitting down to read the entire 11-sentence description on the back of Defendant's box of coconut charcoals, an ordinary consumer of Defendant's product would believe that CocoNara and its European counterpart, CocoBrico, were in "collaboration" with Titanium Charcoal to produce this product.

59.     The foregoing acts of Defendant are intended to cause, have caused, and are likely to continue to cause confusion, mistake, and deception among consumers, the public, and the trade as to whether Defendant's products originate from, or are affiliated with, sponsored by, or endorsed by Master Sales.

60.     Evidence of at least one consumer's confusion regarding the apparent

affiliation between CocoNara and Titaniuam Charcoal can currently be found at:

https://www.youtube.com/watch?v=tzrcZogSBJY.

61.     Defendants have acted with clear knowledge of Master Sales's ownership
of the Master Sales Trademarks and with deliberate intention or willful blindness to
unfairly benefit from the goodwill symbolized thereby.

62.     Defendants' acts constitute trademark infringement in violation of Section
32 of the Lanham Act (15 U.S.C. § 1114).

63.     Upon information and belief, Defendants have made and will continue to
make substantial profits and gains to which they are not in law or equity entitled.

64.     Upon information and belief, Defendants intend to continue their
infringing acts, unless restrained by this Court.

65.     Defendants' acts have damaged and will continue to damage Master
Sales's reputation.

### COUNT III
**Trademark Dilution, 15 U.S.C. § 1125(c)**

66.     Plaintiff realleges and incorporates by reference the allegations contained
in paragraphs 1-565 as though fully set forth herein.

67.     The CocoNara Trademarks are strong and distinctive marks that have been
in use for over eight years and have achieved enormous and widespread recognition in
the hookah industry.

68.     The CocoNara Trademarks are famous within the meaning of Section
43(c) of the Lanham Act (15 U.S.C. § 1125(c)).

69.     Defendant's use of CocoNara's Trademark, without authorization, is
diluting the distinctive quality of the CocoNara Trademarks and decreasing the capacity

of such marks to identify and distinguish CocoNara products.

70.     Defendants have intentionally and willfully diluted the distinctive quality

of the famous CocoNara Trademarks in violation of Section 43(c) of the Lanham Act (15

U.S.C. § 1125(c)).

71.     Upon information and belief, Defendants have made and will continue to

make substantial profits and gains to which they are not in law or equity entitled.

72.     Upon information and belief, Defendants intend to continue their

infringing acts, unless restrained by this Court.

73.     Defendants' acts have damaged and will continue to damage Master

Sales's reputation.

**COUNT IV**
**Unlawful Trade Practices under the District of Colombia's**
**Consumer Protection Procedures Act, D.C. Code § 28-3904**

74.     Plaintiff realleges and incorporates by reference the allegation set forth in

paragraphs 1-73 as though fully set forth herein.

75.     Defendant, through its website and accompanying advertisements, has

misrepresented material facts regarding the quality and source of Plaintiff's products and

its business relationship with its original manufacturer.

76.     The foregoing acts of Defendant are intended to cause, have caused, and

are likely to continue to cause confusion, mistake, and deception among consumers, the

public, and the trade as to the quality and source of Plaintiff's products, as well as

confusion as to whether Defendant's products originate from or are affiliated with Master

Sales.

77.     Defendants' activities constitute unlawful trade practices in violation of

the District of Colombia's Consumer Protection Procedures Act, which prohibits

misrepresentation as to a material fact which has a tendency to mislead D.C. Code § 28-3904(e).

78.     Upon information and belief, Defendants have acted with knowledge of CocoNara's trademark and with deliberate intention or willful blindness to unfairly benefit from the incalculable goodwill symbolized thereby.

79.     Upon information and belief, Defendants have made and will continue to make substantial profits and gains to which they are not in law or equity entitled.

80.     Upon information and belief, Defendants intend to continue their infringing acts, unless restrained by this Court.

81.     As a result of Defendant's deception and unlawful trade practices, Plaintiff has suffered and is likely to suffer damage in the form of lost sales and a loss of goodwill with regards to Plaintiff's business.

<u>**COUNT V**</u>
**Intentional Interference with Prospective Economic Advantage**

82.     Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1-81 as though fully set forth herein.

83.     Since the company's inception in 2006, Plaintiff has developed a loyal customer base who rely on the known quality of Plaintiff's products.

84.     Defendant has knowledge of Plaintiff's relationship with its customers and accompanying business expectancy as indicated by its own statements claiming that "[i]f you are familiar with coconut coals you know that CocoNara had the best quality years ago[.]"

85.     Defendant intentionally and maliciously interfered with Plaintiff's business relationship with its customers by, among other things, claiming that the quality

and consistency of Plaintiff's products have declined in recent years and that Plaintiff's

original manufacturer has stopped producing products for Plaintiff because of this.

86.    These blatantly false statements induced a number of Plaintiff's

established customers to terminate their ongoing business relationship with Plaintiff.

87.    As a result of Defendant's intentional interference with Plaintiff's

established business relationship with its loyal customer base, Plaintiff has suffered a

dramatic loss of sales, loss of goodwill in the industry, and a general loss of faith in

Plaintiff's business and the quality of its products.

## COUNT VI
### Defamation

88.    Plaintiff realleges and incorporates by reference the allegations contained

in paragraphs 1-87 as though fully set forth herein.

89.    Defendant, through its business website, made the following defamatory

claims regarding Plaintiff and its business:

> (1) "Over the years CocoNara has dropped in quality and
> consistency because they have been outsourcing their production to
> other manufacturers."
> (2) "The original manufacturer has decided to stop producing for
> CocoNara because of this."

90.    These statements are false in that the quality of Plaintiff's products has not

decreased as a result of the alleged outsourcing of those products, Plaintiff terminated

business relations with its original manufacturer on its own free will, and the original

manufacturer did not stop producing for Plaintiff for the reasons Defendant claims.

91.    Defendant, without privilege or authorization, published these defamatory

statement to a wide range of persons in the public via the Internet with knowledge of their falsity or with a reckless disregard for their truth. Defendant's unprivileged written publications of these statements can be found on its website, located at: http://www.hookahjohn.com/Titanium-Coconut-Coal-16ct-Box-t16.htm.

92.     As a result of Defendant's conduct, Plaintiff has suffered financial harm, in the form of lost or diverted sales, as well as reputational harm, in the form of lost goodwill in connection with Plaintiff's business and established customer base.

**COUNT VII**
**Common Law Unfair Competition**

93.     Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1-92 as though fully set forth herein.

94.     Defendant's false and misleading statements to Plaintiff's customers about Plaintiff's poor charcoal quality and alleged outsourcing of products constitute unfair competition under the common law of the District of Columbia.

95.     By its conduct, Defendants have intentionally and willfully engaged in unlawful, unfair and fraudulent business practices.

96.     Defendant's false statements have damaged Plaintiff's reputation in the trade, caused Plaintiff to lose sales, and unlawfully injured Plaintiff's customer relationships.

97.     Upon information and belief, Defendants have made and will continue to make substantial profits and gains to which they are not in law or equity entitled.

98.     Upon information and belief, Defendants intend to continue their infringing acts, unless restrained by this Court.

99.     Defendants' acts have damaged and will continue to damage Master Sales.

## COUNT VIII
### Unjust Enrichment

100.    Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1-99 as though fully set forth herein.

101.    The acts complained of above constitute unjust enrichment of Defendants at Plaintiff's expense, in violation of the common law of the District of Columbia.

102.    Defendant's retention of these benefits violates fundamental principles of justice, equity, and good conscience.

**WHEREFORE**, Master Sales respectfully requests that this Court enter judgment against Defendants as follows:

    **A.**   Finding that: (i) Defendant has violated Section 32 of the Lanham Act (15 U.S.C. § 1114); and Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a) and (c)); (ii) Defendant has engaged in unlawful trade practices in violation of the Consumer Protection Procedures Act, D.C. Code § 28-3904; (iii) Defendants have tortuously interfered with Plaintiff's prospective economic advantage; (iv) Defendants have defamed Plaintiffs in violation of the common law of the District of Columbia; (vii) Defendants have engaged in unfair competition under the common law of the District of Columbia; and (viii) that Defendants have been unjustly enriched in violation of the common law of the District of Columbia.

    **B.**   Granting an injunction, pursuant to Rule 65 of the Federal Rules of Civil Procedure, 15 U.S.C. § 1116, preliminarily and permanently restraining and enjoining Defendants, their officers, agents, employees, and attorneys, and all those persons or entities in active concert or participation with them from:

      1.     manufacturing, importing, advertising, marketing, promoting, supplying, distributing, offering for sale, or selling any products which bear the CocoNara Marks, or any other mark or design element substantially similar or confusing thereto and engaging in any other activity constituting an infringement of any of Master Sales's rights in the CocoNara Marks;

      2.     engaging in any other activity constituting unfair competition with Master Sales, or acts and practices that deceive consumers, the public, and/or trade including without limitation, the use of designations associated with Master Sales;

    C.  Requiring Defendants to recall from any websites, products, or other advertisements, promotional and marketing materials therefore, any false and misleading statements about Plaintiff and the quality of its products.

    D.  Requiring Defendant to modify any authorized and truthful comparative advertising by including the corresponding trademark registration symbol and an appropriate disclaimer;

    E.  Requiring Defendants to file with this Court and serve on Master Sales within thirty days after entry of the injunction a report in writing under oath setting forth in detail the manner and form in which defendants have complied with the injunction;

    F.  Directing such other relief as the Court may deem appropriate to prevent consumers, the public, and/or the trade from delivering any erroneous impression that any product at issue in this action that has been manufactured,

imported, advertised, marketed, promoted, supplied, distributed, offered for sale, or sold by Defendants, has been authorized by Master Sales, or is related in any way with Master Sales and/or its products;

G.   Awarding Master Sales statutory damages of $2,000,000 per type of good used in accordance with Section 35 of the Lanham Act (15 U.S.C. § 1117) or alternatively, ordering Defendant to account to and pay to Master Sales all profits realized by their wrongful acts and also awarding Master Sales its actual damages, and also directing that such profits or actual damages by trebled, in accordance with Section 35 of the Lanham Act (15 U.S.C. § 1117).

H.   Awarding Master Sales actual and punitive damages to which it is entitled under applicable federal and state laws;

I.   Awarding Master Sales its costs, attorney's fees, investigatory fees, corrective advertising expenditures undertaken in response to Defendant's false advertising, and expenses to the full extent provided by Section 35 of the Lanham Act (15 U.S.C. § 1117) and the District of Columbia's Consumer Protection Procedures Act, D.C. Code § 28-3904.

J.   Awarding Master Sales pre-judgment interest on any monetary award made part of the judgment against Defendants; and

K.   Awarding Master Sales such additional and further relief as the Court deems just and proper.

### DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Master Sales requests a trial by jury in this matter.

Respectfully submnitted,

Dated: December 3, 2014          Master Sales, LLC

By:   /s/ Haytham Faraj
      Haytham Faraj
      Its attorney
      The Law Offices of Haytham Faraj
      105 West Adams Street
      Suite 2150
      Chicago, Il 60603
      312-635-0800
      haytham@farajlaw.com

